IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

### AT SEPTEMBER TERM, 1833.

———

JOHN DEN ex dem. SENECA SINNICKSON and JAMES B. SINNICKSON v. HENRY SNITCHER and OTHERS.

———

These words in a will, " I give and bequeath unto my son, S. C. my home plantation, including all the lots purchased thereto ; and my will is, that if he shall die without issue, that then, at his decease, the said plantation with all the improvements thereon, shall be equally divided into equal parts in quantity and quality ; the one half part thereof, I give and bequeath to Samuel Allen and William Miller in trust, that they, or the survivor of them, do convey and assign the said equal half part unto such persons as shall be appointed and named by the monthly meeting of Friends, held in Salem, to receive the same for the use and benefit of the said meeting," &c. held, that the testator intended that his son Samuel, should have the whole of the plantation in fee simple, in case he had issue, and that at all events, he should be the absolute and unconditional owner of one half of it ; that the testator did not intend to limit the estate of Samuel, in the whole premises, upon the event of his dying without issue, but only that his interest or estate in one moiety of the premises should terminate upon the happening of that event.

If a testator makes a limitation upon a definite event, or definite failure of issue, as distinguished from a indefinite failure of issue, the limitation over is good, by way of executory devise. The mind and intention of the testator, if it can be discovered, must prevail, unless that intention comes in conflict with some fundamental principle of law.

Den *v.* Snitcher and others.

By the act of 1784, *Rev. Laws.* 60, all devises of land, in which the words, "heirs and assigns, or heirs and assigns forever," are omitted, and no expressions are contained in the will, by which it appears that such devise was intended to convey an estate for life, and no further devise thereof after the decease of the devisee to whom the same shall be given, all such devises shall convey an estate in fee simple.

The word estate, means real or personal, according to the sense in which it is used, and that sense must.often be ascertained by the connection in which the word is placed ; or the subject matter to which it has reference.

---

This was an action of ejectment, and was noticed for trial at the circuit court, holden at Salem, in and for the county of Salem at the December term, 1831, before the late Chief Justice Ewing. The parties, by their attorneys, agreed upon the following state of the case.

First.   Joseph Copner, being seized of the premises in question, made and executed his last will and testament, in due form of law, to pass real and personal estate, bearing date 14th June, 1809.; and thereby devised the same as follows, to wit:

" I give and bequeath unto my son, Samuel Copner, my home plantation, including all the lots purchased thereto, and my will is, that if he shall die without issue, that then, at his decease, the said plantation, with all the improvements thereon, shall be equally divided into equal parts, in quantity and quality ; the one half part thereof, I give and bequeath to Samuel Allen and William Miller, in trust, that they, or the survivor of them, do convey and assign the said equal half part, unto such persons as shall be appointed and named by the monthly meeting of Friends held in Salem, to receive the same for the use and benefit of the said meeting, to be applied to the maintenance of such of the members of the said meeting as may need assistance, and to such other useful and necessary purposes, as the members of the said meeting shall, from time to time, deem useful and expedient ; " and after several other devises and bequests, the testator further declares, "My will is, and I do hereby direct and order that all the remainder of the rents, profits and residue of my estate, after the payment of my just debts, be equally divided, between my wife Jane, my son Samuel, and my two grandchildren, Sinnick, and Jane Sinnickson, share and share alike, (prout said last will and testament, duly proved and recorded

Den *v.* Snitcher and others.

according to law.) Second. Joseph Copner the testator died so as aforesaid seized, in the month of October, 1809, without having revoked or altered his said will, leaving issue, Samuel Copner, his son, and Seneca Sinnickson and Jane Sinnickson, the son and daughter of his daughter Sarah, by Andrew Sinnickson, her first husband, and Ann Sinnickson, the daughter of his said daughter Sarah Sinnickson, by Andrew Sinnickson, her second husband, and his widow, Jane Copner, him surviving. Third. Seneca Sinnickson, the grand son of the testator, named in the will of Joseph Copner, as Sinnick Sinnickson, is one of the lessors of the plaintiff. Fourth. Jane Copner, the widow of Joseph Copner, by her last will and testament, dated 29th of March, 1814, among other things devised as follows : " I give and bequeath unto my son, Samuel Copner, all the residue of my estate, of what nature soever." (prout said will duly proved and recorded.) Fifth. Jane Copner, the testatrix, died in the month of March, 1819, without altering or revoking her said will, leaving the said Samuel Copner, her surviving. Sixth, Jane Sinnickson, the grand daughter of the said testator, Joseph Copner, by her last will and testament, executed in due form of law, to pass real and personal estate, bearing date the 26th May, 1823, devised as follows : " I give and bequeath all the residue of my estate, after payment of debts, both real and personal, to my nephew, James B. Sinnickson, and in case he should die without children, my will then is, that both my real and personal estate be divided, equally among his surviving brothers and sisters (prout said will duly proved and recorded.) Seventh. The testatrix, Jane Sinnickson, died in the month of June, 1823, without altering or revoking said will, leaving the said James B. Sinnickson, her surviving. Eighth. James Bruere Sinnickson, one of the lessors of the plaintiff, is the same James B. Sinnickson named in the will of the said Jane Sinnickson. Ninth. Samuel Copner, the son of the testator, by his last will and testament, bearing date the 17th April, 1828, devised the same to William Robinson and Ann Blackwood, as follows : " I give and devise to the said William Robinson and Ann Blackwood, as tenants in common, and to their heirs and assigns in fee simple, the one half part of a certain plantation situate in the township of Lower Penns Neck,

which said half part, was devised to me by my father, Joseph
Copner, deceased, the other half part of the said plantation hav-
ing been given by my father, after my death, to certain persons,
to be appointed by the Friends meeting, for certain purposes
expressed in his will containing said devise." (Prout said will
duly proved and recorded.) Tenth. The said Samuel Copner,
died on or about the month of August 1830, without altering
or revoking said will, and without issue, leaving Seneca Sin-
nickson and Ann Blackwood, his heirs at law. Eleventh. The
defendant confesses lease, entry and ouster, and also. that at
the time of the commencement of this suit, the said William Rob-
inson and Ann Blackwood, were in possession of the premises
in question, being one moiety of the home plantation, mentioned
in the will of Joseph Copner, by their tenant Henry Snitcher,
Twelfth. It is agreed, that, if upon the foregoing facts the court
should be of opinion, that the lessors of the plaintiff are entitled
to the whole or any part of the premises in question, then judg-
ment shall be entered for the plaintiff for the part to which the
plaintiff shall be entitled, with six cents damages and six cents
costs ; and, if the court should be of opinion that the lessors of the
plaintiff are not entitled to recover any part of the said premises,
then judgment of non suit to be entered with costs of suit—either
party to be at liberty to turn this case into a special verdict,
and bring a writ of error, within one term after rendering
judgment.

*Wall*, for the plaintiff.

*Field* and *P. D. Vroom*, for defendants.

HORNBLOWER, C. J. Joseph Copner, by his will, gave to
his wife Jane Copner, during her natural life, the plantation sit-
uated, &c. ; and after her death, he devised the same in fee to
his grand daughter, Ann Sinnickson. By a previous clause in
his will, the testator had directed his executors to rent out *all*
his plantation, tracts of land and meadows, except the planta-
tions so as aforesaid devised to his wife, for the term of five
years ; and appropriated the rents thereof together *with* his
personal estate, to the payment of his debts and funeral ex-
penses. The testator then makes a devise in these words : "I
give and bequeath unto my son Samuel Copner, *my home plan-*

*tation, including all the lots purchased thereto ;* and my will is, *that if he shall die without issue, that then, at his decease,* the said plantation, with all the improvements thereon, shall be equally divided into equal parts in quantity and quality ; the one half part thereof, I give and bequeath to Samuel Allen and William Miller in trust, &c." The testator without making any further devise or disposition of the other half of the premises, proceeds to dispose of other parts of his estate. He gives one plantation and fifty acres of meadow, &c. to his grandson, Sinnick Sinnickson, in fee simple ; another lot of land and house, to his grand daughter, Jane Sinnickson, for life, and then to her heirs. The rents and profits of another plantation, he gives to his sisters, Rebecca Barns and Esther Gilmore, during their lives, and at their death, to be equally divided, between his son Samuel and his grandson Sinnick Sinnickson, in fee simple. The testator next gives to his nephew, Samuel Gilmore, two lots of five acres each, with the house, blacksmith's shop, and the improvements thereon, in fee simple ; and then makes a residuary clause in the following words : " My will is, and I do hereby direct and order, that all the remainder of the rents, profits *and residue of my estate,* after the payment of my just debts, be equally divided between my wife Jane, my *son Samuel* and my two grand children, Sinnick and Jane Sinnickson, share and share alike."

The testator, Joseph Copner, died in October, 1809, leaving his wife Jane, his son Samuel, his grand son Seneca, (in the will called Sinnick) and his grand daughters, Jane and Ann, him surviving. Samuel Copner, the testator's son, died without issue, in August, 1830, leaving Seneca Sinnickson and Ann Blackwood, his heirs at law, having first made a will, and therein devised to William Robinson and Ann Blackwood, as tenants in common, in fee simple, one half part of the said plantation, so as aforesaid devised to him by his father Joseph Copner, deceased.

William Robinson and Ann Blackwood, are the defendants claiming title, under the will of Samuel Copner ; and Snitcher, their co-defendant, is their tenant.

This cause comes before the court on a special case, made at the circuit ; but according to the view I have taken of the sub-

ject, it is unnecessary to state any more of the facts in the case, than I have already mentioned. The provision made by Joseph Copner, for the payment of his debts, is not contained in the case, but the whole of his will was used on the argument by counsel on both sides ; and I therefore feel myself at liberty to advert to such parts of it, as appear to me calculated to lead us back to the mind and intention of the testator.

The counsel for the plaintiff contends that Samuel Copner took only, an estate in fee tail, in the whole of the plantation ; and that on his death without issue, the moiety not devised over by the testator, either descended to his heirs at law, or passed by the residuary clause in his will. If the former, then the lessors of the plaintiff, claim some share or shares, as heirs at law, and if the latter, then they make title to certain portions of the premises, under and by virtue of several devises set out in the state of the case.

But it will not be necessary to decide between these alternatives, unless it shall be first settled, that Samuel took only a life estate in the whole premises, under his father's will ; for if he took a fee simple, in one moiety thereof, then on his death without issue, that moiety passed, by his will, to William Robinson and Ann Blackwood, his devisees, in fee.

The only serious question in this case is, whether the interest or estate of Samuel Copner, in the *whole* of the devised premises, was limited upon the event of his dying without issue; or, whether his interest or estate, in *one moiety* only, of the devised premises, was limited upon that event?

If the limitation extends to the devisee's estate in the *whole premises*, then it is of no consequence to the defendants, whether he took a fee tail, as contended for by the plaintiff's counsel, or a fee simple, by way of executory devise, as insisted upon by the defendant's counsel. For, as the devisee did actually die without issue, his estate terminated at his death ; nothing of course passed by his will to the defendants; and the premises must either go according to the devise over, or in the absence of such devise, sink into the residue and pass by the residuary clause, or else descend to the heirs at law.

It may be well enough, however, to remark, that the devisee, under the words of this will, could not take an estate in fee tail ;

for, the limitation is not upon an indefinite failure of issue; but it is expressly confined to a failure of issue at the time of the death of the devisee.   It is true, that a devise to A, or to A and his heirs, and if he dies without issue, then over to another, creates a fee tail, by implication, as effectually, as if the testator had used the most technical language.   *Den* v. *Taylor*, 2 *South.* 417.   But it is equally certain, that if a testator, makes a limitation upon a definite event, or definite failure of issue, as distinguished from an indefinite failure of issue, that the limitation over, is good by way of executory devise.   4 *Kent's Com.* 268, *&c.*

We have only then to recur to the language of the testator, to settle the question.   What does he say?  " My will is, that if he shall die without issue, that then "—When?  " *at his decease* the said plantation shall be divided," &c.   Here the testator has pointed out and referred to an event, which was certain to happen, and that too, at a period not more remote than the death of Samuel, as fixing the time when, if there should then be a failure of issue, the estate should go over.   This court in the case of *Den.* v. *Taylor, 2 South. Rep.* 413 ; and *Den* v. *Schenck,* 3 *Halst. Rep.* 29, fully recognized and acted upon this distinction.   (See the authorities referred to by court and counsel in the latter case, and by Mr. Justice Story, in *Lippet* v. *Hopkins,* 1 *Gall's Rep.* 54; 4 *Kent's Com.* 262, &c.)   Let us then revert to the important question, whether the devisee's estate in the *whole* or only his estate in a moiety of the devised premises, was limited upon his dying without issue?

The mind and intention of the testator, if it can be discovered, must prevail, unless that intention comes into conflict, with some fundamental principle of law, which ought not to be broken down to suit the whims or caprice of any testator.

It appears to me, hardly possible, that any intelligent mind, unembarrassed by technical rules and legal refinement, can entertain a doubt upon the plain reading of this will, that the testator *intended* his son Samuel should have the whole of the plantation in fee simple, in case he had issue, and that at all events, he should be the absolute and unconditional owner of one half of it.   He did not intend to give the estate to Samuel's issue ; but he intended to give it to Samuel, if he had issue     If

the testator had in so many words, devised the one half to Samuel, in fee simple, and then given him the other half, in like manner, with a devise over, immediately after his death, if he died without issue ; and then added, that this limitation was to extend only to the latter moiety, he would only have expressed in plainer terms, what, in my opinion, it was his purpose and intention to say and do ; still the question recurs—has the testator expressed that intention with sufficient certainty to guide us in our determination ?

By the act of 1784, *Rev. Laws* 60, it is enacted, that " all devises made of lands, &c. in which the words, heirs and assigns, or heirs and assigns forever, are omitted, and no expressions are contained in such will and testament, whereby it shall appear that such devise was intended to convey only an estate for life ; *and no further devise thereof, being made of the devised premises,* after the decease of the devisee, to whom the same shall be given ; *all such devises,* shall be taken, &c. to convey an estate in fee simple."

Let us then enquire, First, Did Joseph Copner devise to his son Samuel, *any lands, &c.* without using the words, " heirs and assigns." He certainly did ; and if he had stopped there, the whole plantation, under the influence of the act of Assembly, would have passed, in fee simple, to Samuel, the devisee.

Secondly. Has the testator used any expressions to shew that he intended to give Samuel, " only an estate for life," in *all* the lands devised to him ? Or, to change the form of the interrogatory, has the testator used any expressions to shew, that he *did not intend,* that Samuel should have a fee simple, *in any part* of the lands devised to him ? I consider these questions of exactly the same import, for, since the act has declared that a devise to A, without words of perpetuity or inheritance, is a devise in fee simple, we must presume the testator used the words understandingly, and so intended to give the land in fee simple ; unless he has used some expressions inconsistent with such intention, or qualifying the general gift, and shewing that he *did not* mean to give the devisee either the whole, or any part of the land in fee simple.

The answer to this question, is a plain one ; the testator has certainly used expressions in his will, sufficient in law, to shew

that he *did not* intend to give Samuel, *an absolute and unconditional* fee, in *the whole* of the lands devised to him; for, in the event of his death without issue, *and at the time of his death,* the testator directs the land to be equally divided; and gives one half of it, to other persons; as to one half, therefore, he certainly did not intend to give Samuel an unconditional fee.

But I cannot find in this qualified and restricted limitation, anything to shew that the testator intended to give the devisee, only a life estate in *the whole* of the lands; or any "expressions whereby it appears," he *did not* intend, that Samuel, should have a fee simple in *any part* of the lands. On the contrary, a strong inference presses itself on my mind, that as he gave him *the whole,* in words that would carry a fee, and then restricts the generality of the gift, as to one moiety of the premises, that he intended he should have the other moiety in the full and unqualified manner in which the whole had just been given to him.

But thirdly. Has the testator made any further devise of " *the devised premises,*" after the death of Samuel?

It must be remembered, the term " the *devised premises,*" used in the act, includes the *whole of* the devised premises. The testator has not then made " any further devise" *of* " *the devised premises.*" He has devised over, or made " a further devise" of *a part* of them, but not of the whole—then, there are lands devised to Samuel in this will, without the words " heirs and assigns," of which the testator has made no "*further devise,*" and then by the operation of the statute, Samuel has a fee simple in those lands.

Suppose a testator devises to A. two distinct farms, in two successive devises; thus, " I give to my son Samuel my farm in B.—Item, I also give and devise to my son Samuel, my farm in C. and if my son Samuel should die without issue, then I give and bequeath my farm in C. to J. S. his heirs and assigns." Would the limitation annexed to the farm in C. defeat the fee simple of Samuel in the farm in B. or reduce his interest therein to a life estate, or a fee tail? I think it would not. Nor can I perceive, that if the two farms were given by one entire devise, that it would make any difference—or, if one entire plantation, or any other divisible property, was thus given, and afterwards

Den *v.* Snitcher and others.

one half of it devised over, upon the happening of some event, that it could affect the devisee's title to the other half. In either case there would be *land* devised to the devisee, which the testator had not devised over; and by force of the statute, the devisee would have a fee simple in such lands. And if such was the testator's intention in this case, I can see nothing in that intention that contravenes any rule of law. And this I think is giving to the statute a just and reasonable construction, fulfilling its provisions, and disappointing none of its expectations. The policy of the act of 1784, and of the whole course of our legislation upon the subject of real estate, in perfect accordance with the spirit of our civil and political institutions is, to disenthrall the title to land, and the nature of estates, from the perplexing subtleties and refinements which the doctrines of the feudal system, and the influence of the statute *de donis*, have thrown around them. And accordingly, in the act of 1784, the legislature have declared, that a devise of lands, shall pass an absolute and unqualified fee, unless the testator expresses a different intention. As to one half of the lands devised to Samuel the testator has done so—as to the other, I think he has not, and therefore as to one moiety of the plantation, Samuel took a fee simple.

That such too, was the testator's intention, is evidently to be collected from the whole will, and is in perfect accordance with what might be naturally expected, under the circumstances of the testator's family. He had but one son and one daughter, and three grand children. We should expect this son to be the most favored object of his bounty; and he accordingly gives him the homestead; probably his most valuable plantation—intending if he had issue, he should have the whole of it, and at all events one half, in fee simple. We find him making ample provision for his wife, giving her the use of a plantation, and after her death devising it to his grand daughter Ann, in fee. Another plantation, and fifty acres of meadow to his grandson, a house and lot to his grand daughter Jane and her heirs— Another plantation to his sisters for life, and then equally to be divided between his son Samuel and his grandson—to his nephew Gilmore, ten acres of land, with the house, blacksmith's shop, and improvements thereon in fee simple; and again giving

his grandson an equal share with Samuel in the residue of his estate. If then he intended to give Samuel only a life estate in the premises in question, he was the least favored object of his bounty.

The counsel for the plaintiffs attempted to draw an argument from the residuary clause; insisting that the testator must have had reference in that clause to the reversion of the estate devised to Samuel in tail. · I do not say, that that clause will not carry such reversionary interest, if there is one. *Prest. on Est.* 2 vol. 89. But the manner in which that clause is conceived, in connection with the rest of the will, does not favor his construction. The testator had appropriated a particular fund, viz. The rents of his real estate for five years, and the *whole* of his personal estate, to the payment of his debts—and it would seem as if it was the surplus of this fund that he had in contemplation when he framed the residuary clause. It was the *remainder of the rents and profits and residue* of his estate, after payment of his just debts. The word *estate*, means real or personal, according to the sense in which it is used ; and that sense must often be ascertained by the connection in which the word is placed, or the subject matter to which it has reference. *Doe* v. *Spearing*, 6 *T. R.* 610. The testator had devoted the rents of his real estate and the whole of his personal estate, to a particular object —it might prove superabundant—and accordingly, we find him disposing of " the remainder of the rents and profits " of his real estate, " and residue of his " personal " estate " after the payment of his debts—that is, he was disposing of the surplus, if any, of that fund which he had raised for the payment of his debts.

I think, therefore, no argument can be drawn from the construction of the residuary clause, to prove that the testator's intention was to give Samuel only a life estate, or an estate in tail. And when we inquire what disposition the testator makes of the residue, it appears still more improbable. To whom does he give it ? To his wife Jane, to his son Samuel, and his two grandchildren, equally to be divided between them.

Then, upon the construction contended for by the plaintiff's counsel, we involve this absurdity, viz : That the testator intended to give his son Samuel one eighth of the plantation in fee simple, after he, Samuel, was dead and gone—that is, an estate

in lands in fee simple, to take effect in possession, after his death, when he could neither enjoy it, nor dispose of it, and that too, only in the event of his having no children to enjoy it after him. It is making the testator say to his son, I will not give you my plantation in fee simple, but when you die, I will give you one eighth part of it in fee simple, provided you die without issue. If such could be the legal effect of a devise; it could hardly have been the absurd and unnatural intention of the testator.

I am clearly of opinion, that if upon the limitation in this case, the *whole* plantation had been devised over, Samuel would have taken a fee simple in the whole, as an executory devise, subject to be defeated, upon his dying without issue living at the time of his death. But as only one moiety was devised over on such failure of issue, and no further or other devise made of the other moiety, I am of opinion, the testator did not intend to limit the estate of Samuel, *in the whole premises* upon the event of his dying without issue, but only that his interest or estate in one moiety of the premises, should terminate upon the happening of that event.

This construction of the will of Joseph Copner, gives effect to every part of it. It defeats no devise, introduces no confusion, and involves nothing absurd, or inconsistent with any rule of law.

FORD, J. This case presents a devise, as it appears at large, in the last will and testament of Joseph Copner, dec. but which, without omitting any thing material to its construction, may be abridged as follows :—

" I give unto my son Samuel Copner my homestead plantation ; and my will is, that if he shall die without issue, then, at his decease, the said plantation shall be divided into two equal parts, one half of which I give to the monthly meeting at Salem." Then after ordering an accumulation of rents and profits for a number of years, and after making other devises and bequests, the testator proceeds as follows—" My will is, and I direct and order, that all the remainder of the rents, profits and residue of my estate, be equally divided between my wife Jane, my son Samuel, and my two grand children Sinick and Jane Sinickson, share and share alike."

This is a devise of the plantation to Samuel, in such a form,

that though the words heirs and assigns are not used, it is allowed by both parties, to convey to him an estate for more than his life only: The dispute being whether it amounts to the gift of a fee simple, or only of an estate in fee tail.

One side insists that he took a fee simple, without the words heirs or assigns, and that this is by virtue of the statute, *Rev. Laws* 60, which declares that a devise without those words, heirs and assigns, shall pass a fee simple; unless other expressions shew that the estate was intended to be for life only; or unless the premises be devised over to some other person after the death of the devisee. And although one moiety of the plantation is devised over to the monthly meeting, after Samuel's decease, the other is not; that it is no farther disposed of to any body; and therefore, as to this remaining moiety, that the devisee took it in fee simple.

But this position, that the latter moiety is not devised over to any body, is alleged to be founded on a mistake of the words of the will; the words of which are, " *that if he shall die without issue* ;" and these words imply, in law, that the whole planta-tion shall go over after his death *to his issue*," if he have any ; and a devise to one and *his issue*, has ever been holden, in law, to be the gift of an estate in *fee tail*; which is an inheritance descendible not only to issue, but the issue of issue, as long as the line of lineal descendants shall continue unbroken ; being limited to no definite number of successions, but transmissible indefinitely, until the line of succession stops at some ultimate possessor, by his failing to have issue at the time of his decease ; on the happening of which event the particular estate becomes exhausted, and a remainder or residue of the estate will then be left, which the testator can limit over to whomsoever he pleases, in his will ; and that in this will it is actually disposed of under the name of " *the residue of my estate*," to four persons, namely, the testator's wife Jane, his son Samuel, and two of his grand children, all which interests are united in the lessors of the plaintiff.

Now this construction would be unquestionably a just one, if the testator's language was consistent with an estate of inheritance descendible till an indefinite failure of issue ; but if his words repel the idea of such an estate, then it cannot be an es-

*state tail ;* and I think it demonstrable that *such* an estate is contrary both to his express words, and likewise to his plain intent.

The testator does not say, " if my son Samuel, shall die without issue, then I give a moiety of the plantation to the monthly meeting," for then it would be an estate tail to Samuel, by the most settled rules of law; the words are, " if my son Samuel, shall die without issue, then, *at his decease,* I give a moiety of the plantation to the monthly meeting." If ever the meeting take a moiety, it must vest in them *at* Samuel's decease, or it can never vest in them by the words of the will ; their waiting for an indefinite failure of Samuel's issue, in order to come in for a *remainder,* is incompatible with a devise to them *at* Samuel's decease. Such waiting, and yet taking *at his decease,* cannot stand together; one or the other must give way. Either a remainder after an indefinite failure of issue was not intended, or if it was, the words " *at his decease,*" can have no meaning assigned to them ; they must be rejected as superfluous ; but that is contrary to a standing rule of law, that every word in a will shall operate, if possible ; and as these words designate an epoch when the moiety shall vest, (if ever) in the meeting, they are, evidently, capable of operation ; and therefore, the moiety must vest in the meeting at Samuel's decease, or it never can, consistently with the words of the will.

This construction is fortified also by some other words in the clause ; it orders the *improvements,* as well as the plantation, to be divided *at his decease ;* can it be possible that the improvements meant, are those which shall be in existence after an indefinite failure of issue, when the will says that *at Samuel's death,* the improvements shall be divided ?

Furthermore, what seems entirely to exclude the idea of postponement till after an indefinite failure of issue, is, that instead of the interest for the meeting being limited to their trustees, Allen and Miller, *and to their heirs,* it is limited *personally to them,* and the *survivor ;* whereas there is no greater absurdity than that they shall personally take a *remainder* which might not accrue till after the lapse of centuries ; and this shews the testator's contemplation of an interest that must accrue, if ever, at the death of Samuel.

If the interest of the meeting was to commence at Samuel's

decease, there would be no room for an estate tail, because the plantation could not descend to the issue, and go to the meeting likewise; nor could one moiety go to one of them, and the other moiety to the other, for an estate tail is given to Samuel in the *whole* plantation if it is in any part; and if it could not arise in the moiety given to the meeting, it could not apply to any part; the question being what estate Samuel took in the whole plantation devised to him.

Furthermore, if this could be construed an estate tail, with a reversion thereafter to the testator; and if the testator can be construed to have disposed of it, by the description of " *the residue of his estate*," to the four persons named, it could not avail any thing as to Samuel, because it is not limited to the *right heirs* of Samuel, but to Samuel *himself*, who, by the tenor of the will, must be dead before the reversion could vest in him; and therefore it could be no other than a lapsed devise as to him. It is not a fee in the reversion, because the word heirs is omitted; and though there is no limitation over, still it cannot *become* a fee, by virtue of the statute, because as a reversion, it never vested in him; he was dead before its accrual; and a dead man cannot take, because he is incapable of assenting to a devise, and for the same reason no assent can be implied.

If then it is not an estate tail, it may be asked what is to be done with the words, " if he die without issue." I answer they are part of a set of words, employed by the testator, to express a condition, the import of which is this, that if Samuel shall die without issue *living at the time of his death*, then a moiety of the plantation shall go to the meeting. The words, " *then at his decease*," confine the words " *if he shall die without issue*," to that time; and oblige it to mean, if he have no issue *at his death*; then instead of the *whole* plantation going to a remote, collateral, and unknown heir, a moiety of it is devised *at his death* to this religious society. It is not the limitation of a remainder, after an indefinite failure of issue, but at his decease, if he fail to have any then; nor can it operate as a limitation, without doing violence to both the language and intent of the testator. It is not the devise of an estate tail, but of a fee simple, which fee is liable to be defeated in favor of the monthly meeting as to a moiety thereof at his decease, on the simple *condition* of his

having no issue, *at that time*, to whom it could descend. It is a strict executory devise, when upon the happening of a contingent event, the fee simple is to pass away from the collateral heirs of Samuel, and to vest in certain trustees for the use and benefit of the monthly meeting of Friends, held in Salem, to be applied by them to useful and charitable purposes. And it is a strictly legal condition within the rule, as to perpetuities, for the event must happen, if at all, at the decease of the first devisee. Wherefore, according to the agreement in the state of the case, there must be judgment of nonsuit, with costs of suit.

Let judgment be entered for the defendants.

CITED in *Den* v. *Drew,* 2 *Gr.* 71 ; *Den* v. *Allaire, Spencer,* 8, 23 ; *Applegate* v. *Birdsall, Id.* 247 ; *Morehouse* v. *Cotheal,* 2 *Zab.* 438 ; *Moore* v. *Rake,* 2 *Dutch.* 585.